### In re TWEEDIE TRADING CO.

(Supreme Court, Appellate Division, First Department.   June 9, 1905.)

1. ORDER FOR PERPETUATION OF TESTIMONY—WHEN IMPROPER.

   The granting of an order for the perpetuation of testimony is improper, where sought solely to enable the plaintiff to frame the complaint.

2. SAME—APPLICATION FOR ORDER—NOTICE TO ADVERSE PARTY—VACATION OF ORDER.

   Where, though an application for an order for the perpetuation of testimony should have been made earlier than it was, and a longer notice should have been given defendant, and plaintiff, by greater diligence, could have given a longer notice, yet, if defendant was not prejudiced thereby, the order should not be vacated or the depositions suppressed.

3. SAME—VACATION ON THE MERITS.

   An order for the perpetuation of testimony should not have been vacated on the merits, though defendant had only 24 hours' notice, where the testimony produced was material to plaintiff on the trial, and the witnesses were foreigners temporarily here, who might not return to this country, and where it did not appear that defendant's lawyer who conducted the examination did not fully comprehend the subject-matter of the investigation, or that he did not intelligently cross-examine the witnesses, or that defendant suffered by reason of the examination.

   O'Brien, J., dissenting.

Appeal from Special Term, New York County.

In the matter of the Application of the Tweedie Trading Company to perpetuate the testimony of Hans. Hansen and others. From an order vacating an order for the perpetuation of testimony, petitioner appeals. Reversed.

Argued before HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Everett P. Wheeler, for appellant.
Herbert Barry, for respondent.

HATCH, J. On the 10th day of August, 1904, the Tweedie Trading Company procured an ex parte order for the purpose of examining seven persons, officers and crew of the steamship Skuld, which was at that time in the port of New York. Its application was based upon the affidavit of M. Stanley Tweedie, president of the Tweedie Trading Company, which company was about to commence an action against the Somerset Coal Company. The coal company, subsequent to the granting of the order, made a motion to vacate the same, which was denied; and the examination of the witnesses therein mentioned, for the purpose of perpetuating their testimony, was had. Thereafter, and on the 3d day of December, 1904, the Somerset Coal Company procured an order for leave to renew the motion upon the merits, to be heard upon such further affidavits in addition to the original papers as might be then presented.

The particular grounds upon which the motion to vacate the ex parte order was based in the first instance do not clearly appear. It is to be assumed, however, that any technical defects which existed in the papers upon which the order was founded were called to the attention of the court at the time when such motion was heard. The application resulting in the present order was made after leave obtained to renew the same upon the merits and upon additional papers. This authorized the Tweedie Trading Company to present additional papers in support of the order which it had obtained, and also to meet the case made by the coal company upon the merits. It appears from the decision of the court below that the court, in vacating the ex parte order and in suppressing the depositions, disposed of the same solely upon the merits. This was in conformity to the order granting leave to renew the motion, as under that order the only question before the court was the merits of the application, which eliminated any technical objections; and, if any such technical objections existed against the first order, the coal company was concluded by the disposition of that motion to vacate, as it took no appeal from the order entered thereon.

It is quite possible that the affidavit upon which the original order was granted was defective, in that it did not state, as required by sections 870 and 871 of the Code of Civil Procedure, that the proposed action was about to be brought in a court of record, which is essential to be stated in an application under these sections. It may be, also, that there were other technical defects in such affidavit. These questions, however, are not now before us, as the last application was expressly directed to a consideration of the merits, and the learned court below disposed of it upon such theory. It is now made to appear that an action has been brought against the coal company in the Supreme Court of the state of New York for a breach of contract in the quality of coal furnished thereunder to the steamers, and in the delay in furnishing it. The papers presented on the part of the plaintiff in the action thus brought are abundantly sufficient to justify the granting of an order for the perpetuation of the testimony of the witnesses who have been examined, and such order has been held by this court to be proper for

the perpetuation of testimony of witnesses under such circumstances, although it would be improper if the examination were sought solely to enable the plaintiff to frame the complaint. Matter of Anthony & Co., 42 App. Div. 66, 58 N. Y. Supp. 907.

Upon the merits, we think this motion should not have been granted. The grounds urged for granting the motion upon the merits were that the notice of the examination was so short as not to permit the defendant or its attorneys properly to prepare for the cross-examination of the witnesses, and that the Tweedie Trading Company was guilty of negligence in not making an earlier application for their examination, as the steamer had been in the port of New York for nearly or quite a week prior to the application The court, in its determination, adopted the latter suggestion, holding that the Tweedie Trading Company had control of the witnesses whose testimony was sought to be perpetuated, and also knowledge of when the ship would arrive; that the controversy had existed for a considerable period of time prior to the arrival of the steamer; that the matters involved were complicated, and the shortness of the notice did not permit of preparation for the cross-examination. It appears that, while the Tweedie Trading Company had knowledge that the ship was in port, yet the necessity for the perpetuation of the testimony of the witnesses had not then become apparent. The trading company were only advised by their counsel of the necessity of perpetuating the testimony shortly prior to the making of the application. While there is basis for saying that the application ought to have been made earlier than it was, and that a longer notice should have been given to the defendant than was given, yet, if it is made to appear that the defendant coal company has not been prejudiced on account of the shortness of the notice, the order ought not to have been vacated or the depositions suppressed, even though the plaintiff by greater diligence could have given a longer notice.

It appears by the moving papers that the coal was furnished pursuant to the terms of a written contract, which provided that the coal company should furnish to the steamers of the trading company "Somerset Run of Mine Coal at Philadelphia," at a particular price per ton, and that particular provisions were made for the time when the coal should be delivered. The issue between these parties is as to a breach of this contract, as to the quality of the coal furnished and the time of its delivery. Upon such subjects, it is evident that the coal company is possessed of information and of testimony available to it in showing that it fulfilled its contract. If the coal was delivered on time, and was of such a character as answered to the description, "Somerset Run of Mine Coal," and was delivered at the particular place required, the testimony sought to be perpetuated will only become material as to the actual quality of the coal delivered, and the time and place of its delivery. If the coal was not of the quality required in the written contract, then the testimony sought to be perpetuated grows more material, as it is quite important upon the question of damages.

The testimony given under the order is not set out in full in the

record. Sufficient is stated, however, to show the course of the examination, and the questions to which the testimony related. These were the ship's draft, and condition on the voyage after the coal had been delivered, the speed she made as compared with other voyages, the steam pressure, the speed per hour, the basis of a calculation made by the captain as to the speed lost by the alleged poor quality of the coal, the weather conditions on the voyage, and the number of revolutions of the engine with varying steam pressure. Testimony respecting these conditions was mainly derived from entries made in the logbook of the particular voyage, and comparison thereof with the logbooks of other voyages. It is evident, therefore, that no great amount of time was required for an intelligent lawyer to acquaint himself with the facts so as to enable him to conduct an intelligent cross-examination upon such subjects. The lawyer who conducted the examination is not heard in any affidavit or other proof to say that he did not fully comprehend the subject-matter of the investigation, the logbooks, the point at issue, or but that he intelligently and fully cross-examined the witnesses upon such subjects. The service of the order for the examination gave 24 hours' notice to the Somerset Coal Company, and, in negotiations between the parties, notice of the proposed examination was given some 40 hours prior thereto. The examination began at 12 o'clock noon of Thursday, August 11th, and was finished at 1 p. m. on August 15th; covering a period of four days. No examination, however, was held on Saturday, the 13th, or Sunday, the 14th. The logbooks were produced at the commencement of the examination, and counsel for the defendant had opportunity and availed himself of a full and free inspection of the same, and in his cross-examination covered fully all the subjects material in any view of the issue. The adjournment was had at the request of counsel for the defendant, and he had the opportunity during the full working day of Saturday to inspect the logbooks, which were the substantial basis upon which the examination was conducted. Under such circumstances, it is evident that no complication existed, either as to the evidence or the issue, which would not have been fully comprehended by intelligent counsel; and the examination shows, from its length and character, that the counsel conducting it for the defendant labored under no disability in comprehending the situation. Upon that subject there was practically no difference between the respective counsel upon either side. The logbooks themselves were introduced in evidence, and are now available. No particular matter has yet been called to our attention in which the defendant has suffered by reason of the examination which has been had. Under such circumstances, we are unable to see wherein or how the defendant is prejudiced by the testimony which has been taken. The testimony produced is material and necessary to the plaintiff upon the trial. The witnesses are foreigners, and may never return again to this country. It is quite probable, to say the least, that, unless the testimony which has been taken be perpetuated, it will be lost entirely to the plaintiff. The steamer at the time of the motion was in foreign waters, and there

is no certainty that she will arrive in this port before disposition is made of the controversy, or that when she does arrive the witnesses will still remain in employment upon the steamer. Under these circumstances, we think that upon the merits the application to vacate the order and suppress the depositions should have been denied.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion to vacate should be denied, with $10 costs. All concur, except O'BRIEN, J., who dissents.

